[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 15, 2007
THOMAS K. KAHN
CLERK

No. 06-14421
Non-Argument Calendar

_____

BIA No. A97-660-157

LINGJIAN ZHU,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(March 15, 2007)**

Before TJOFLAT, HULL and FAY, Circuit Judges.

PER CURIAM:

Lingjian Zhu, a native and citizen of China, petitions this Court for review of the Board of Immigration Appeals's ("BIA") affirmance of the immigration judge's ("IJ") decision denying his applications for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231, 8 C.F.R. § 208.16.  Zhu argues that substantial evidence supported his claim that he suffered past persecution in China, and had a well-founded fear of future persecution if returned to China, on account of his political opinion and membership in a particular social group.  For the reasons set forth more fully below, we deny Zhu's petition for review.

Zhu entered the United States on September 26, 2003 without valid entry documents.  Upon his entry at the Miami International Airport, Zhu provided a record of sworn statement to an officer of the former Immigration and Naturalization Service ("INS").[1]  The immigration officer asked Zhu a series of questions and Zhu provided the following information.  Zhu was born in China on November 15, 1984 and entered the United States to apply for political asylum.  He had never been arrested before at any time or place.  He left China on October 10, 2002 because he was afraid that he would be sent to jail.  Zhu then went to Vietnam, where he stayed for one year before traveling to the United States.

---

[1]The INS was abolished on March 1, 2003, and replaced with the Department of Homeland Security ("DHS"). See Homeland Security Act, Pub.L.No. 107-296 (Nov. 25, 2002), 116 Stat. 2135.

On October 1, 2003, the INS issued Zhu a notice to appear ("NTA"), charging him with removability pursuant to INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant not in possession of valid entry documents at the time of entry into the United States. On that same day, Zhu underwent a credible fear interview with an immigration officer. Zhu stated that, in October 2002, the police came to his family's house in China and informed Zhu's family that his father was involved in Falun Gong activities. Zhu's father was a publisher and the police found Falun Gong books in his possession. The police then took Zhu and his father, mother, and sister to the police station. After two days of being detained at the police station, Zhu's relatives bailed him out of jail, but they did not bail out the other members of his family because it was too expensive. Zhu's relatives told him to leave the country.

On March 17, 2004, Zhu filed an application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), based on his political opinion and membership in a particular social group. Zhu stated in his application that his father owned a small bookstore that sold Falun Gong books. In October 2002, the police came and searched his family's house and found Falun Gong books in a closet. The police took Zhu and his family to the police station and detained them there. After two days, Zhu's relatives bailed him out of jail, but

3

his parents and sister remained in jail until the middle of 2003. Zhu thereafter left China with the help of his relatives.

Zhu appeared for his removal hearing in March 2005. Zhu testified that he was born on October 15, 1985. He stated that his father owned a small bookstore and Zhu helped his father in the store. The Chinese government had prohibited the practice of Falun Gong, but Falun Gong books were popular, so Zhu's father continued to secretly sell the books. Zhu testified that neither he nor any member of his family ever practiced Falun Gong. The police came to Zhu's house on October 8, 2002 and found Falun Gong books in their cabinet. The police burned the books and took Zhu and his family to the police station. According to Zhu, one of the officers kicked him in the abdomen and then other officers beat him with their hands and a baton until he fainted. Zhu also testified that, when he got out of jail, his entire body was covered with bruises. Zhu witnessed the officers beating his father as well.

Zhu remained in jail for two or three days, but the rest of his family was in jail until September 2003. Zhu testified that he was the only person bailed out of jail because his family did not have a lot of money and his father asked his relatives to bail Zhu out first because he had severe injuries. Zhu did not go to a doctor after he was released from jail because he was afraid he would be sent back to jail and because he only had one day until he had to report back to the police.

4

Zhu's relatives had arranged for a "snakehead" to help him leave China.

On cross-examination, Zhu testified that he did not mention in his asylum application or credible fear interview that he had been beaten because it did not ask him that question. Zhu stated that he did tell the immigration officer and his lawyer about the beating, but that they did not record that information. The government then asked Zhu why he did not testify that he was hung from the ceiling with his hands behind his back and had cold water thrown on him, as his father described in a letter that was admitted into evidence. Zhu responded that it was a long time ago and it was normal that he would forget certain details. Zhu stated that his family bailed him out rather than his younger sister because in Chinese culture the parents like the male child more than the female child.

The government also pointed out that Zhu's asylum application and his birth certificate indicated that he was born on November 15, 1985, but that he testified that he was born on October 15, 1985. Zhu acknowledged that his birthday was in November and the translator then told the IJ that she had mistakenly thought that Zhu had originally said October. Zhu also stated that he indicated when he arrived in the United States that he was born in 1984, rather than 1985, because the snakehead and his lawyer in China told him that if he was too young he would not be able to bail out of jail and he would be sent back to China. Zhu further testified that his family raised 50,000 Ren Mien Bi (RMB) to bail him out of jail and

5

$65,000 to get him to the United States. The government asked Zhu why his family would collect all of that money to send him to the United States rather than get his father, mother, or sister out of jail. Zhu stated that he did not know.

In support of his applications, Zhu submitted (1) his notarial birth certificate, (2) a household register, (3) his father's residential identification card, (4) a letter from his father, and (5) family photographs. Zhu's birth certificate indicated that he was born on November 15, 1985. The household register indicated that Zhu lived with his father, mother, and sister in China. Zhu's father's residential identification card was issued on December 11, 2003 and included his name, date of birth, and address. Zhu's father wrote his letter on February 16, 2005 and stated that the police came to his house in October 2002. He indicated that the police destroyed all of his books and damaged his furniture beyond repair. He further stated that the police arrested his entire family and detained them. Zhu's father also wrote that, while his family was detained, the police kicked Zhu, "hung him from the ceiling with his hands bound behind and punched him, and poured cold water over him."

The IJ denied Zhu's applications for asylum, withholding of removal, and withholding of removal under the CAT, and ordered him removed to China. In the written decision, the IJ found that Zhu was not credible due to the material evidentiary gaps and inconsistencies in the record. Specifically, the IJ noted the

6

following inconsistencies. First, the IJ found that Zhu indicated in his record of sworn statement that he was born in 1984, but he testified that he was born in 1985. Zhu stated that he gave the false birth date because he had been told to do so by the snakehead and his lawyer in China. Second, the IJ found that, while Zhu indicated in his sworn statement and credible fear interview that he had never been arrested, he also indicated and testified that he had been arrested in China. Third, the IJ noted that, contrary to Zhu's testimony that he had been kicked and beaten by the Chinese police, Zhu never stated in his asylum application, sworn statement, or credible fear interview that he had been beaten. Fourth, Zhu never indicated or testified that he had been hung from the ceiling with his hands behind his back and had cold water thrown on him, as his father stated in his letter. The IJ noted that, during cross-examination, Zhu indicated that those events did occur, but that he forgot them. Fifth, the IJ found that, while Zhu testified that his father was also beaten by the police, Zhu never indicated that in his asylum application, sworn statement, or credible fear interview, and, moreover, Zhu's father did not state as such in his letter. Sixth, Zhu testified that the police burned his father's books, but he had never before mentioned the burning. Seventh, the IJ found that Zhu testified that his family was detained until September 2003, but his father's identification card was issued in December 2003.

The IJ also noted that the following further undermined Zhu's credibility:

7

(1) Zhu's testimony that his family raised a substantial amount of money to free Zhu from imprisonment and smuggle him to the United States, but did not use any of the money to free his family members from jail; (2) the lack of evidence in the record to establish that Zhu was actually in Vietnam for one year before arriving in the United States; and (3) the lack of documentation supporting Zhu's claim that his body was covered in bruises when he was released from jail. The IJ concluded that Zhu's claim for asylum was not credible, and, thus, he failed to establish that he had suffered past persecution in China or had a well-founded fear of future persecution if returned to China. Because Zhu failed to meet the lower burden of establishing his eligibility for asylum, the IJ found that he had also failed to meet his burden required for withholding of removal. Lastly, the IJ found that Zhu failed to present credible evidence to establish his eligibility for withholding of removal under the CAT.

Zhu appealed the IJ's decision to the BIA, arguing that his claims supporting his asylum and withholding of removal applications were credible and that the IJ erred in denying his applications. In his brief before the IJ, Zhu argued that the IJ's adverse credibility determination was based on speculation and conjecture. He maintained that the IJ did not find any internal consistencies within his testimony, but found only minor inconsistencies between his testimony and his asylum application, which did not relate to the heart of his asylum claim. The BIA

affirmed the IJ's decision without opinion and indicated that the IJ's decision served as the final agency determination.

Zhu argues on appeal that the IJ's adverse credibility determination was not supported by the record. Zhu specifically notes that the IJ never explained why it was implausible that (1) Zhu's notarial birth certificate was issued on October 20, 2003; (2) Zhu's father's identification card was issued in December 2003 when his father was released from jail in September 2003; and (3) Zhu's family wanted to bail him out before his sister because, in Chinese culture, parents prefer the male child. Zhu contends that he offered a reasonable explanation as to why his family would use their money to free him from jail and smuggle him into the United States and not free his other family members, specifically, that he left because his relatives told him to do so and that they would resolve his family's situation. Zhu also asserts that he did not have documents supporting his testimony that he had bruises all over his body when he left jail because, as he testified, he did not seek medical care. Further, the country reports indicated that it was common for police to beat detainees. Zhu thus argues that the IJ's findings were not explained with specific and cogent reasons, or supported by the record.

Zhu goes on to argue that the IJ erroneously found and relied upon inconsistencies between his testimony and his asylum application, sworn statement, credible fear interview, and documentary evidence. He maintains that

9

the IJ failed to consider his explanation for why he provided a false date of birth to the asylum officer and that the falsification of his date of birth was not an attempt to enhance his asylum claim. He also contends that the IJ relied too heavily on the discrepancies between his testimony and his sworn statement and credible fear interview because airport and credible fear interviews should be used with caution in supporting adverse credibility findings. Zhu argues that he merely omitted minor details during his sworn statement and credible fear interview. As to his father's letter, Zhu asserts that, contrary to the IJ's finding, Zhu's father's letter did indicate that he also was beaten because Zhu's father stated that the police tortured "us," meaning Zhu's entire family.[2]

When the BIA issues a decision, we review only that decision, except to the extent the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." Id. Here, the BIA adopted the IJ's reasoning without opinion. Thus, we will review both the BIA's and IJ's decisions. To the extent that the IJ's and the BIA's decisions were based on legal determinations, this Court's review is de novo. D-Muhumed v. U.S. Attorney

---

[2]Zhu does not argue before this Court that the IJ erred in denying his application for withholding of removal under the CAT. (See generally Blue Brief). Thus, Zhu abandoned his request for CAT relief. See Al Najjar, 257 F.3d at 1283 n.12 (petitioner abandons issues not raised in an initial brief before this Court).

Gen., 388 F.3d 814, 817 (11th Cir. 2004). The IJ's and BIA's factual determinations are reviewed under the substantial evidence test, and we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1283-84 (quotation omitted). Therefore, a finding of fact will be reversed "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal . . . ." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 125 S.Ct. 2245 (2005); see also 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . ."). Likewise, a credibility determination is reviewed under the substantial evidence test, and "this [C]ourt may not substitute its judgment for that of the BIA with respect to credibility findings." D-Muhumed, 388 F.3d at 818.

To establish eligibility for asylum, the petitioner has the burden of proving that he is a "refugee," which is defined as:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion

11

8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A); see also Forgue v. U.S. Attorney Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). If the petitioner establishes past persecution, there is a rebuttable presumption that the petitioner has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). However, where the petitioner cannot demonstrate past persecution, he may establish a well-founded fear of future persecution by showing that his "fear of persecution is subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. "The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution. . . . In most cases, the objective prong can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." Id. (citation and quotation omitted).

However, the petitioner's past persecution or well-founded fear of future persecution must be on account of a protected activity. See Forgue, 401 F.3d at 1286. "In order to demonstrate a sufficient connection between future persecution and the protected activity, an alien is required to present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of such a protected activity." Id. (quotation omitted) (emphasis in original). "Thus, evidence that either is consistent with acts of private violence or the petitioner's failure to cooperate with guerillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of

12

persecution based on a statutorily protected ground." Ruiz v. U.S. Att'y Gen., 440

F.3d 1247, 1258 (11th Cir. 2006).

"The testimony of an applicant, if found to be credible, is alone sufficient to

establish" eligibility for asylum. Id. at 1287 (citing, inter alia, 8 C.F.R.

§§ 208.13(a), 208.16(b), which, respectively, refer to asylum and withholding of

removal). Indications of reliable testimony include consistency on direct

examination, consistency with the written application, and the absence of

embellishment as the applicant repeatedly recounts his story. See In re B-, 21 I&N

Dec. 66, 70 (BIA 1995) (persuasive authority); see also Dalide v. U.S. Attorney

Gen., 387 F.3d 1335, 1343 (11th Cir. 2004) (affirming the BIA's adverse

credibility determination, which was based upon its finding that the applicant's

testimony conflicted with his answers to interrogatories, affidavit, deposition, and

other documentary evidence). Although uncorroborated but credible testimony

may be sufficient to sustain an applicant's burden of proving eligibility for asylum,

"[t]he weaker an applicant's testimony, however, the greater the need for

corroborative evidence." Yang v. U.S. Attorney Gen., 418 F.3d 1198, 1201 (11th

Cir. 2005). The IJ must make "clean determinations of credibility." Id. (quotation

omitted). Further, "an adverse credibility determination does not alleviate the IJ's

duty to consider other evidence produced by an asylum applicant," and the IJ must

provide "specific, cogent reasons" for her credibility finding. Forgue, 401 F.3d at

13

1287. Nevertheless, when the IJ enumerates an applicant's inconsistencies and is supported by the record, "we will not substitute our judgment for that of the IJ with respect to its credibility findings." D-Muhumed, 388 F.3d at 819.

To establish eligibility for withholding of removal, the petitioner must meet a standard more stringent than the "well-founded fear" asylum standard, and "show that h[is] life or freedom would 'more likely than not' be threatened upon return to h[is] country because of, among other things, his political opinion." Huang v. U.S. Attorney Gen., 429 F.3d 1002, 1010-11 (11th Cir. 2005) (citing Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) and INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A)). Thus, an applicant who is unable to meet the standard for asylum is also unable to meet the more stringent standard for withholding of removal. Huang, 429 F.3d at 1011 (citing Al Najjar, 257 F.3d at 1292-93).

In Zhu's case, the IJ found that Zhu had not provided a credible basis for his claim, and, thus, that he did not meet his burden of establishing that he suffered past persecution in China or had a well-founded fear of future persecution if he returned to China. The IJ's finding was supported by substantial evidence in the record. As the IJ found, Zhu's testimony contained several material inconsistencies with his sworn statement, credible fear interview, asylum application, and documentary evidence. First, Zhu testified that he had been detained, beaten, and kicked in the abdomen by the Chinese police. However, Zhu

14

never mentioned such mistreatment in his sworn statement, credible fear interview, or asylum application. Second, Zhu's testimony about the beating he sustained did not comport with his father's letter, which detailed that Zhu had been hung from the ceiling and had cold water poured on him. Zhu's only explanation for why his testimony did not match the details his father provided was that he had forgotten those details over time. Third, Zhu testified that his father had also been beaten by the Chinese police, but Zhu never mentioned his father's beating in his interviews or application, nor did his father indicate as such in his letter. Fourth, Zhu testified that the police burned his father's Falun Gong books, but Zhu had never mentioned that event before. Fifth, Zhu admitted during his testimony that he had originally lied about his year of birth. Sixth, Zhu indicated in his sworn statement at the airport that he had never been arrested, but his later accounts of his past persecution were based upon his arrest in China.

The IJ sufficiently listed and detailed the above-mentioned inconsistencies in its written opinion. See Forgue, 401 F.3d at 1287 (holding that the IJ must provide "specific, cogent reasons" for its credibility finding). Zhu's credibility is further undermined because his documentary evidence does not support his claim of past persecution. Yang, 418 F.3d at 1201 ("[t]he weaker an applicant's testimony, however, the greater the need for corroborative evidence"). The only document that might have supported his claim was his father's letter; but, as explained above,

15

that letter was materially inconsistent with Zhu's testimony regarding the beating that he sustained and whether his father was also beaten. Given the many omissions and discrepancies in the record, substantial evidence supports the IJ's adverse credibility finding.

Zhu nonetheless argues on appeal that (1) the IJ did not explain why some of its findings were implausible; (2) Zhu offered a reasonable explanation for his family's act of bailing only Zhu out of jail; (3) the IJ relied too heavily on the inconsistencies between his testimony and the sworn airport statement and credible fear interview; and (4) Zhu merely omitted minor details during in his sworn statement and credible fear interview. As to Zhu's argument that the IJ failed to explain how some of its findings undermined Zhu's credibility, that argument is without merit. The IJ found that it was questionable or implausible that (1) Zhu's family was detained until September 2003, but his father's identification card was issued in December 2003; (2) Zhu's family raised money to free Zhu only; and (3) Zhu had no evidence that his body was covered in bruises when he was released from jail. Even though the IJ provided no explanation as to why the issuance of Zhu's father's identification card in December 2003, clearly after he was released from jail, was questionable, this singular finding does not outweigh the substantial evidence that supported the remainder of the IJ's findings. Moreover, it is reasonably questionable that Zhu's family would raise such a

16

significant amount of money to free him from jail and smuggle him to the United States, but allow his other family members to remain in jail for nearly one year, and that he would not need to seek medical attention after sustaining a severe beating. This is especially true in light of the IJ's other adverse credibility findings. Thus, we will not substitute our own findings for the IJ's as to these issues. See D-Muhumed, 388 F.3d at 819 (explaining that, when the IJ enumerates an applicant's inconsistencies and is supported by the record, "we will not substitute our judgment for that of the IJ with respect to its credibility findings").

With regard to Zhu's argument that the IJ relied too heavily on his sworn airport statement and credible fear interview, the IJ properly considered Zhu's statements in those interviews because, in each interview, Zhu consistently omitted details about the beating he sustained. Such consistent omissions evidence Zhu's embellishment of his claim in his asylum application and testimony. See Dalide, 387 F.3d at 1343 (affirming the BIA's adverse credibility determination, which was based upon its finding that the applicant's testimony conflicted with his answers to interrogatories, affidavit, deposition, and other documentary evidence). Furthermore, the IJ's adverse credibility determination was not based solely on the inconsistencies between Zhu's testimony and his statements from his interviews; rather, the IJ also found inconsistencies within Zhu's testimony, and between his testimony and his documentary evidence. Finally, as to Zhu's argument that he

17

omitted only minor details from his sworn statement and credible fear interview, that argument is unsupported because Zhu's claim rested largely on the beating he sustained, and feared he would sustain in the future, at the hands of the Chinese police, which information he omitted from his initial statement and interview.

To the extent that Zhu also argues that he was also eligible for withholding of removal, that argument is without merit. As noted above, the standard for eligibility for withholding of removal is more stringent than that for asylum. See Huang, 429 F.3d at 1010-11. Here, Zhu did not demonstrate his eligibility for asylum because he did not credibly establish that he suffered past persecution or had a well-founded fear of future persecution on account of a protected ground. As such, Zhu also cannot demonstrate that his life or freedom would more likely than not be threatened upon his return to China because of his membership in a particular social group or his political opinion. See Huang, 429 F.3d at 1011 (explaining that an applicant who is unable to meet the standard for asylum is also unable to meet the more stringent standard for withholding of removal).

For all the foregoing reasons, the IJ's finding that Zhu did not credibly establish his eligibility for asylum or withholding of removal on account of a statutorily protected ground is supported by substantial evidence in the record. Accordingly, his petition for review is

**DENIED.**